UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
UNITED STATES OF AMERICA,                    MEMORANDUM
                                             AND
               Plaintiff,                    ORDER
                                             07-CR-429 (TCP)
     -against-

VARSHA MAHENDER SABHNANI and
MAHENDER MURLIDHAR SABHNANI

               Defendants.
-----------------------------------------------------X

PLATT, District Judge.

Before the Court is defendants' motion seeking an Order granting their requests: (1) for a change of venue pursuant to Federal Rule of Criminal Procedure 21(a); (2) for reassignment of the instant case pursuant to Local Rule 50.3(c) ;[1] and (3) for leave to make additional pre-trial motions.

For the following reasons, defendants' motion is **DENIED**.

On May 14, 2007, defendants were arrested pursuant to a Complaint charging them with violations of 18 U.S.C. §§ 1589 and 2 (forced labor) after complaining witness, "Jane Doe 1," informed the police that she and another woman were being held captive by defendants at their home. On May 15, 2007, defendants were arraigned before Magistrate Judge A. Kathleen Tomlinson, who issued a Temporary Order of Detention for defendants and set the matter down for

---

1. This Court denied defendants' motion to have their case reassigned to the Hon. Arthur D. Spatt on the record on July 13, 2007 wherein the Court also noted that this was the *second* application made by defendants to have the case reassigned to Judge Spatt pursuant to Local Rule 50.3(c). See Trans. July 13, 2007 at 2-3. Defendants' first application was also denied on the record. See Trans. May 24, 2007 at 6-7.

a bail hearing. May 15, 2007 Trans. at 30. On May 17, 2007 and after holding the bail hearing, Magistrate Judge Tomlinson determined that defendants were to be released subject to specific conditions. May 17, 2007 Bail Trans. at 45-63.

Thereafter, on May 22, 2007 an Indictment was returned charging the defendants with two counts of forced labor in violation of 18 U.S.C. §§ 1589, 1594(a)(2), and 3551, and two counts of harboring in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii), 1324(a)(1)(A)(v)(II),1324(a)(1)(B)(iii), and 18 U.S.C. § 3551.[2] On May 24, 2007, defendants were arraigned on the Indictment and, upon the government's application, this Court ruled that it would hear argument on the issue of whether the bail hearing should be reopened in light of new information which surfaced subsequent to Judge Tomlinson's ruling releasing defendants on bail.

On May 30, 2007, and after oral argument on the government's motion to have the bail hearing reopened,[3] this Court directed defendants' attorneys to meet with the government to work out a set of conditions to ensure defendants appearance at trial in this matter. Thereafter, two separate draft Stipulations were submitted by defendants to this Court, neither having been pre-submitted for

---

2. On September 18, 2007, a Superseding Indictment was returned charging defendants with additional violations of 8 U.S.C. §1324 (a)(1)(A)(v)(I), 18 U.S.C. §§ 371, 982(a)(6)(A), 982(b)(1), 1581(a), 1592, 1594, 1594(a), 21 U.S.C. § 853(p), 28 U.S.C. § 2461(c) on which defendants were arraigned and entered not guilty pleas on September 19, 2007.

3. The government contended that the defendants had not been forthcoming with regard to their wealth and assets and, as such, presented a risk of flight. In support of their application, the government presented evidence of significant financial transactions between the defendants and relatives overseas as well as evidence of additional accounts and assets over which defendants had control and failed to disclose to Pretrial Services.

approval to the government. The Court declined to approve or even consider either draft due to defendants' failure to comply with this Court's direction that the stipulated terms be agreed upon by both parties prior to submission to the Court. See Order dated June 5, 2007. On June 6, 2007, the government rejected defendants' draft proposal and, by letter motion, stated that no conditions or set of conditions existed which would mitigate defendants' risk of flight. See Govt. Ltr. dated June 6, 2007.

On or about June 6, 2007, defendants fired all but one of their first set of lawyers. On June 8, 2007, defendants fired their second set of lawyers.

On June 11, 2007, this Court ordered the defendants held without bail pending trial based on the defendants' and the government's failed attempts to reach an agreement as well as the Court's finding that the defendants had not been forthcoming with regard to their finances. On or about June 14, 2007, defendants appealed the Order denying them bail to the United States Court of Appeals for the Second Circuit. On July 6, 2007, the Second Circuit vacated and remanded said Order based on the government's identification of conditions which would ameliorate defendants' risk of flight. See United States v. Sabhnani, Docket No. 07-CR-429, Entry No. 64, at 2.

Subsequently, this Court held conferences with defendants and the government on July 27, August 3 and August 14, 2007 regarding the status of defendants' compliance with the requirements for release as set forth in the Second Circuit's Mandate. On August 21, 2007 and after satisfying the bail

conditions, defendants were released to home detention.

>Federal Rule of Criminal Procedure 21(a) provides in pertinent part:
>**Transfer for Trial**
>**(a) For Prejudice.** Upon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there.

"As a general premise, a change of venue is warranted when the court is satisfied that there exists in the district where the prosecution is pending 'so great a prejudice against the defendant' that 'the defendant cannot obtain a fair and impartial trial.' " United States v. Higgs, 353 F.3d 281, 307 (4th Cir. 2003) (quoting Fed.R.Crim.P. 21(a)).

"In order to prevail on a motion under Rule 21(a), the defendant must show 'a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial.' " United States v. Maldonado-Rivera, 922 F.2d 934, 966-67 (2d Cir. 1990) (quoting Sheppard v. Maxwell, 384 U.S. 333, 363 (1966)).  Accord United States v. Livoti, 196 F.3d 322, 326 (2d Cir. 1999).  Furthermore, a defendant "must show first that the pretrial publicity was sufficiently prejudicial and inflammatory and second that the pretrial publicity saturated the community where the trial was being held." Spivey v. Head, 207 F.3d 1263, 1270 (11th Cir. 2000).  In particular, when requesting a transfer of venue prior to jury selection, defendants must demonstrate "prejudicial pretrial publicity that so pervades or saturates the community as to render virtually impossible a fair trial by an impartial jury drawn from that community." Mayola v. Alabama, 623 F.2d 992, 997 (5th Cir. 1980).

Additionally, in deciding a motion for a change in venue, a district court may consider:

> [T]he extent to which the government is responsible for generating the publicity, the extent to which the publicity focuses on the crime rather than on the individual defendants charged with it, and other factors reflecting on the likely effect of the publicity on the ability of potential jurors in the district to hear the evidence impartially.

Maldonado-Riveria, 922 F.2d at 967.

"The ultimate determination of whether unfavorable publicity renders a fair trial unlikely is committed to the district court's discretion" and the denial of a motion to transfer venue will only be overturned upon a clear showing that the district court abused its discretion. Id.

Defendants argue that the publicity surrounding defendants' case has been "unrelenting and virulent" and, in their moving papers, include approximately thirty local newspaper articles dated May 15 through June 28, 2007 as well as examples of radio and television coverage gleaned from the internet.

Defendants further argue that the government engaged in "sensationalized rhetoric" during the bail hearings including characterizing this case as one of "modern day slavery." As a result, defendants claim, the media dubbed this matter the "Slave Case." Defendants also contend that the prosecution invoked class bias by referring to defendants' home as a "mansion." Furthermore, defendants argue, the government portrayed Ms. Sabhnani as persecuting the complaining witnesses by disparaging and refusing to allow them to practice their religion. Defendants claim a transfer of venue is necessary because of the

inflammatory and prejudicial publicity purportedly generated by the government.

The Court finds defendants have not shown that the pretrial publicity in this case is sufficiently prejudicial and inflammatory or that it has so permeated this district that a fair trial cannot be had.

The government's statements concerning Ms. Sabhnani's allegedly violent conduct toward the complaining witnesses along with statements purportedly made to them concerning their religion were offered during the bail hearings to support its contentions that the defendants presented a risk of danger. Similarly, the government's allegations regarding the defendants' wealth and finances supported its contention that defendants posed a serious risk of flight. In fact and in stark contrast to defendants, it appears that quoted material attributable to the government came from court filings and bail proceedings initiated by the defendants. Accordingly, this Court finds that the government did not purposefully generate negative publicity about the defendants and, moreover, that the government's statements were related to the crimes with which defendants are charged.

Defendants' attorneys, on the other hand, have repeatedly put themselves and their clients in the media spotlight by commenting upon, *inter alia*, the merits of this case;[4] the bail proceedings;[5] and attacking the credibility of the

---

4. A New York Post article dated May 16, 2007 quotes one of Mr. Sabhnani's former attorneys, Charles Ross, Esq., as stating: "This is not a human-trafficking ring. My client wants to clear his name." Mr. Sabhnani's current attorney, Stephen Scaring, Esq. was quoted by Newsday on June 11, 2007 as claiming that "[t]his case is long on spin and short on truth." On July 3, 2007, the New York Times reported that "[d]efense lawyers said the new allegations [that Ms. Sabhnani's mother tried to bribe one victim's son-in-law and that Ms. Sabhnani threatened to have

complaining witnesses.[6]

Additionally, defendants' attorneys repeated failure to consult with the government regarding the conditions of release, as ordered by this Court, resulted in additional and unnecessary court proceedings accompanied by further press coverage.

Finally, coverage of this case by the media can hardly be said to be "unrelenting and virulent" when, based on defendants' submissions of newspaper articles as well as radio and television accounts, the vast majority of media coverage has coincided with the court proceedings in this matter and amounts to no more than the press reporting the news of the day.

Given the constant pre-trial attention in this case created by defendants' motions in this and the Court of Appeals for release on bail, it is safe to say that the bulk of publicity was generated by defendants, not the government.

---

the other victim's husband thrown in jail in Indonesia] would be 'withdrawn or proven to be false.' "

5. A New York Post article dated June 7, 2007 reported that Ms. Sabhnani's former attorney, Sumeet Sondi, Esq., stated "O.J. Simpson did not have to meet a $3.5 million bail and pay $15,000 a day for home arrest like the bail package proposed by his client and her husband, Mahender." In the same article, one of Mr. Sabhnani's former attorneys, Oscar Michelen, Esq., was quoted as saying: "We have actually turned this house into the prison the government wants" and "It's like Sing Sing in Muttontown." In a Newsday article dated June 7, 2007, Mr. Michelen was quoted as saying that a revised draft of bail conditions was the equivalent of "Spandau in Muttontown." On July 9, 2007, Newsday reported that Jeffrey Hoffman, Esq., Ms. Sabhnani's attorney, stated "[w]e are grateful that the Court of Appeals agreed with our position" and that Mr. Scaring stated that the defendants were "looking forward to getting out as quickly as possible."

6. In addition to defendants' court filings seeking an Order requiring one of the victims to undergo a psychological exam, the New York Post reported on July 13, 2007 that the other victim told police she had a relationship with a person living outside the Sabhnani residence. According to that article, Mr. Hoffman said the "revelation from the " 'slave' " . . . proves the women were lying about being imprisoned by Varsha and Mahender Sabhnani."

Accordingly, defendants may not now be heard to complain that a change of venue is warranted based on negative publicity.

Furthermore, requests for transfers of venue have been denied in cases far more notorious than the instant case, including United States v. Yousef, 327 F.3d 56, 155 (2d Cir. 2004) (district court properly denied request for change of venue on the basis of negative publicity in criminal action for conspiracy to bomb United States commercial airliners in southeast Asia and on charges relating to the 1993 bombing of the World Trade Center) and United States v. Volpe, 42 F. Supp. 2d 204, 218 (E.D.N.Y. 1999) (request for change of venue based on extensive pre-trial publicity denied in criminal action against police officers accused of violating detainee's civil rights).

This Court further notes that "thorough voir dire examinations have been used in this circuit to produce unbiased juries, even in high-profile case." Volpe, 42 F. Supp. 2d at 218. See Yousef, 327 F.3d at 155 ("the key to determining the appropriateness of a change of venue is a searching voir dire of the members of the jury pool").

Defendants having filed no additional pre-trial motions, a Superseding Indictment having been returned in this matter on September 18, 2007, and a jury selection and trial date of October 22, 2007 having been agreed upon and set down in open Court on September 19, 2007, defendants' motion for leave to file additional pre-trial motions is DENIED.

Accordingly, defendants' application for (1) for a change of venue

pursuant to Federal Rule of Criminal Procedure 21(a); (2) for reassignment of the instant case pursuant to Local Rule 50.3(c) (see *supra* note 1); and (3) for leave to make additional pre-trial motions is hereby **DENIED**.

SO ORDERED.

/s/<br>Thomas C. Platt U.S.D.J.

Dated: September 20, 2007
      Central Islip, New York