UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                    Plaintiff,


                  -against-                          **MEMORANDUM OF**
                                                     **DECISION AND ORDER**
                                                     07-cr-429 (ADS) (WDW)

VARSHA MAHENDER SABHNANI and
MAHENDER MURLIDHAR SABHNANI,

                                    Defendants.
--------------------------------------------------------------X

**APPEARANCES**:

**BENTON J. CAMPBELL, UNITED STATES ATTORNEY**
**EASTERN DISTRICT OF NEW YORK**
Attorneys for the Plaintiff
610 Federal Plaza
Central Islip, New York 11722
            By:    Mark Joseph Lesko, Assistant United States Attorney,
                   Demetri M. Jones, Assistant United States Attorney


**HOFFMAN & POLLOK LLP**
Attorneys for the Defendant Varsha Mahender Sabhnani
260 Madison Avenue
22nd Floor
New York, NY 10016
            By:    Jeffrey C. Hoffman, Esq.,
                   Susan C. Wolfe, Esq.,
                   Joanna Eftychiou-Evans, Esq., Of Counsel

1

**SCARING & BRISSENDEN, P.L.L.C.**
Attorneys for the Defendant Mahender Murlidhar Sabhnani
666 Old Country Road, Suite 501
Garden City, NY 11530
        By:    Stephen P. Scaring, Esq.,
                Matthew W. Brissenden, Esq.,Of Counsel


**SPATT, District Judge.**

Presently before the Court is a motion by Varsha Mahender Sabhnani and

Mahender Murlidhaer Sabhnani (the "Defendants" or the "Sabhnanis") for a new

trial and for a hearing to investigate alleged prejudicial juror misconduct pursuant

to Rule 33 of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P.").  The

Government opposes the motion.

## I.   BACKGROUND

On May 22, 2007, the Defendants were indicted and charged with two

counts of forced labor and two counts of harboring.  On September 18, 2007,

pursuant to a superseding indictment, the Defendants were charged with (1)

conspiracy to commit forced labor; (2) two counts of forced labor; (3) conspiracy

to harbor aliens; (4) two counts of harboring aliens; (5) conspiracy to commit

peonage; (6) two counts of peonage; (7) conspiracy to commit document

servitude; and (8) two counts of document servitude.

On October 29, 2007, the trial commenced, and on December 17, 2007,

the jury returned a verdict finding the Defendants guilty of all 12 counts including

all the charges in the indictment. On December 18, 2007, following the jury's verdict, the Government moved to remand the Defendants pending their scheduled March 28, 2008 sentencing date. On December 20, 2007, the parties appeared before the Court for oral argument on the issue of the Government's motion to remand the Defendants pending sentencing. At that time, counsel for the Defendant Mahender Sabhnani informed the Court that he had become aware of an alleged incident of juror misconduct during the trial and requested a hearing. The Court denied the request for a hearing, noting that without any sworn statements regarding the alleged misconduct, the Court would take no action.

On January 2, 2008, the Defendants moved for a new trial pursuant to Fed. R. Crim. P. 33. The Defendants' motion papers included an affirmation from Mahender Sabhnani's attorney, Stephen Scaring, as well as an affidavit from Stephen Barcelo, a freelance photographer for the New York Daily News.

Mr. Scaring affirmed that on December 19, 2007, after the jury returned its verdict, he received a telephone call from Kieran Crowley, a reporter for the New York Post. Mr. Crowley informed him that several weeks before the verdict, a Daily News photographer had told him that he overheard one or more female jurors shouting "guilty, guilty" in the parking lot outside of the courthouse.

In his affidavit, Mr. Barcelo stated that, as a freelance photographer for the Daily News, he covered the Sabhnani trial. He "occasionally entered the

courtroom to obtain documents and copies of evidence." As such, he "had opportunities to observe the members of the jury." According to his affidavit, three to four weeks prior to the verdict, he was sitting in his car with the window rolled down. He saw the jurors from the Sabhnani case walking in the parking lot and speaking to each other. He heard two female jurors, who were standing behind his vehicle, speaking and laughing and heard one of those jurors shout "guilty" two or three times. He "could not discern the contents of the remainder of the conversation." Mr. Barcelo stated that he asked New York Post photographer Mary McLaughlin "did you hear that too," but he does not recall her response. Mr. Barcelo told Daily News reporter Richard Weir what he had heard, and at that time, New York Post reporter Kieran Crowley was 8 to 10 feet away.

The Defendants contend that the jurors prematurely deliberated and, as a result, the Defendants' rights to a fair trial were violated. They further contend that the jurors' premature statements demonstrate prejudice towards the Defendants. The Defendants also request that the jurors testify at a hearing regarding the alleged premature deliberations. The Defendants contend that Federal Rule of Evidence ("Fed. R. Evid.") 606(b) does not prohibit the jurors' testimony because the alleged misconduct did not occur during deliberations.

In opposition, the Government asserts that there is no certainty that the person who made the alleged statement was a juror and there is no evidence

4

regarding the topic that the jurors were discussing at the time the statement was made. The Government contends that a new trial is not warranted and that any testimony by the jurors is precluded by Fed. R. Evid. 606(b).

The parties appeared on January 7, 2008 for a hearing on this matter. The Defendants have presented testimony from two witnesses, Stephen Barcelo and Kieran Crowley.

## II.  THE HEARING

Stephen Barcelo is a freelance photographer for the New York Daily News. He testified that he covered the Sabhnani trial from its beginning to the end. Most of the time, he waited in the parking lot of the Federal Courthouse for the Defendants to emerge from the courthouse after the trial day so that he could photograph them. In addition, he did enter the courtroom during the Sabhnani trial a few times to pick up evidence and sometimes just to see what was happening. At those times, he saw the Sabhnani jurors. In addition, Mr. Barcelo saw the Sabhnani jurors going into the courthouse in the morning and leaving the courthouse in the late afternoon.

The incident at issue occurred approximately three to four weeks prior to the verdict. He does not know the exact date. On that occasion, he was in his car waiting in the parking lot outside the courthouse in the front row facing the courthouse. It was dark. He saw jurors coming out and they were greeting each

other.  He thought they were the Sabhnani jurors.  He had his front window partially open a crack.  Probably, the car engine was on and so was the scanner in the car.  Two women passed his car and proceeded behind his car.  He doesn't know how far behind his car the women were because he did not see them behind his car.  In a moment or two, one said in a loud voice, "guilty, guilty" two or three times.  Mr. Barcello testified that he did not know in regard to what context the words were stated, and the words were spoken with "laughter or horsing around."

Initially, he did not pay attention to what he heard.  In fact, he later told reporters that he thought it was amusing.  He told photographer Mary McLaughlin and his New York Daily News reporter Richard Weir about what he had heard.  Mr. Barcello apparently was reminded of this situation when attorney Stephen Scaring called him and he related what he had heard.

On cross-examination, it was revealed that although Mr. Barcello believed the two women who passed his car were jurors in the Sabhnani trial, he could not identify them.  In fact, he stated that he could not identify any of the Sabhnani jurors.  Large groups of persons left the Federal Courthouse at the end of the court day.  In addition, some persons using the adjoining New York State courthouse used the Federal Court parking lot.  The two women who walked past the car were engaged in idle talk or chatter.  The two women walked by his car at a distance of 3 to 4 feet from his car.  Mr. Barcello heard laughter and then the

words "guilty, guilty," spoken in a jovial manner. Only one woman said "guilty, guilty." Initially, he could not hear what they were saying. Mr. Barcello knew that there were two other criminal trials going on in the Federal Courthouse at that time, and there may have been other jurors also exiting the courthouse and entering the parking lot.

Again, Mr. Barcello described the manner in which the words "guilty, guilty" were uttered as "in a joking manner" and in a "nonsense conversation" and "a jovial saying goodbye." He testified that by the tone of the words, "it was not a serious conversation."

Significantly, the women were behind his car and Mr. Barcello did not see who uttered these words. He "assumed" or "believed" that it was one of the two women who passed his car, but it could have been another juror or person. Also, he stated that when he heard these words they meant nothing to him. Importantly, Mr. Barcello could not, today, identify either woman. Strangely, Mr. Barcello could not even identify the two women who walked past his car as Sabhnani jurors. Nor could he identify the voice he heard. Also, Mr. Barcello stated that although he "assumed" it was a Sabhnani juror, it was "possible" that the person he heard was a spectator and not a juror, and he had no knowledge that the statement was made in connection with the Sabhnani trial.

The second and final witness was Kieran Crowley, a reporter for the New

York Post who added little to the substance of the issues in this hearing. Mr. Crowley covered the Sabhnani trial from its inception. On or about December 19, 2007, after the verdict, he called attorney Stephen Scaring and asked him if he knew about the Daily News photographer who heard the words "guilty, guilty." He provided Mr. Scaring with the name of the Daily News photographer.

Mr. Crowley testified that, initially, there was some confusion about his information, and, specifically, whether the person was a Sabhnani trial juror. However, he later discovered that Mr. Barcello believed it was a Sabhnani juror. Mary McLaughlin was a photographer for the New York Post, who apparently was in the area, and she did not hear or see this incident. Because Mr. Crowley at first believed that it was not a Sabhnani juror, it was decided that there would be no further investigation or reporting of the incident. However, when Mr. Crowley heard that Mr. Barcello did believe it was a Sabhnani juror, he contacted Mr. Scaring to determine whether he knew of the incident.

## III. DISCUSSION

### A. Standards Of Review

#### 1. The Rule 33 Standard of Review

Rule 33 is very brief and states that upon the defendant's motion "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. This rule by its terms gives the trial court "broad

discretion to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992); see also United States v. Robinson, 430 F.3d 537, 543 (2d Cir. 2005). In deciding such a motion, the court may weigh the evidence and the credibility of witnesses, but cannot "wholly usurp" the role of the jury. United States v. Autuori, 212 F.3d 105, 120 (2d Cir. 2000); United States v. Guadagna, 183 F.3d 122, 129 (2d Cir. 1999).

Also, this standard has also been described as a "heavy burden," United States v. Fearon-Hales, No 04-231, 2005 U.S. Dist. LEXIS 21619, *3 (S.D.N.Y. Sept. 26, 2005), and "[i]t is well-settled that motions for new trials are not favored and should be granted only with great caution." United States v. Costello, 255 F.2d 876, 879 (2d Cir. 1958). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001).

### 2.    The Juror Misconduct Standard

"Post-trial jury scrutiny is disfavored because of its potential to undermine 'full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of lay people.'" United States v. Stewart, 433 F.3d 273, 302 (2d Cir. 2006) (citing Tanner v. United States, 483 U.S. 107, 120-21, 107 S. Ct. 2739, 97

L. Ed. 2d 90 (1987)). In fact, "probing jurors for 'potential instances of bias, misconduct or extraneous influences' after they have reached a verdict is justified 'only when reasonable grounds for investigation exist,' in other words, where there is 'clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial.'" Stewart, 433 F.3d at 302 (citing United States v. Moon, 718 F.2d 1210, 1234 (2d Cir. 1983)). "The inquiry should end whenever it becomes apparent to the trial judge that reasonable grounds to suspect prejudicial jury impropriety do not exist." Id. (internal citations omitted).

"A district court's investigation of juror misconduct or bias is a delicate and complex task." United States v. Peterson, 385 F.3d 127, 134 (2d Cir. 2004) (citing United States v. Cox, 324 F.3d 77, 86 (2d Cir. 2003)). The trial court has broad flexibility, especially when the alleged prejudice results from statements by the jurors themselves, rather than from the media or other outside influences. Id. (citing Cox, 324 F.3d at 86).

**B.      As To The Defendants' Motion**

       **1.      As To The Evidence Set Forth By The Defendants' Witnesses**

Initially, the Court must comment on the alleged evidence of juror misconduct that has been presented by the Defendants in this case. According to Mr. Barcelo's affidavit and testimony at the hearing, Mr. Barcelo "occasionally"

entered the courtroom during the trial. He did not sit in the courtroom for any length of time. He was a photographer, not a reporter, and photographs are not permitted in any trial in Federal Court. As a result, this Court is somewhat skeptical as to Mr. Barcelo's ability to identify 17 members of the jury in this case. Moreover, according to his affidavit and testimony, he overheard the alleged jurors talking to one another in the rear of his car, while he sat in the car with a car window partially rolled down. Again, the Court is not persuaded as to the reliability of Mr. Barcelo's testimony. In addition, although he contends that he overheard a juror say "guilty" two or three times, he admits that he did not hear any other part of the conversation. Nor did he see what juror made the statements.

In DeHoust v. Baxter Healthcare Corp., No. 93 Civ. 0774, 1999 U.S. Dist. LEXIS 6379, at *3 (S.D.N.Y. May 4, 1999), in a somewhat similar situation, in a motion for a new trial the plaintiff claimed that, during the trial, she overheard a juror say into a telephone, "I'm here for Mrs. DeHoust." The court determined that

> [w]hile the juror's statement may indeed have been an improper communication with a third party during the course of the trial, the plaintiff has hardly demonstrated how this statement prejudiced her case or how it led to a verdict that was a miscarriage of justice. Parenthetically, it could have as easily been no more than an effort at identification to home or office identifying where the jury was sitting.

11

<u>DeHoust</u>, 1999 U.S. Dist. LEXIS at *3.  In the present case, even if the statement was made, the jurors could have been discussing an issue totally unrelated to the trial.  In fact, the term "guilty" could have been used as a joke or in 'kidding around," or in an amusing reference to a movie or television show or in regard to someone who ate all the donuts in the jury room.

Finally, and most importantly, Mr. Barcelo is unable to identify the juror who allegedly said "guilty."  Although he claims that the juror was female, even after his "occasional" entries into the courtroom, he is unable to tell us who the juror was or even identify the voice of the alleged juror.  Moreover, Mr. Barcelo is unable to even provide the Court with a physical description of the juror**.  In** fact, he cannot now identify any of the jurors and, at best, he only assumed it was a Sabhnani juror.

The Court is troubled by the quality and sufficiency of the evidence set forth in support of the Defendants' motion.  The facts alone are so vague and uncertain that the testimony and affidavits are insufficient to justify a further hearing with testimony from the jurors, and certainly not a new trial.  However, even if the Court assumes that a Sabhnani juror did, in fact, say "guilty, guilty" in the parking lot in reference to this case 3 to 4 weeks prior to deliberations, according to the law within this Circuit, that is still insufficient to justify a further

hearing or a new trial.

### 2. As To The Defendants' Claim of Premature Deliberations

"It is a generally accepted principle of trial administration that jurors must not engage in discussions of a case before they have heard both the evidence and the court's legal instructions and have begun formally deliberating as a collective body." Cox, 324 F.3d at 86 (citing United States v. Resko, 3 F.3d 684, 688 (3d Cir. 1993)). This is a part of the Sixth Amendment right to a jury trial. Id. "[W]here the district court instructs a jury to refrain from premature deliberation . . . and the jury nonetheless discusses the case before the close of trial, that premature deliberation may constitute juror misconduct." Peterson, 385 F.3d at 135 (citing Cox, 324 F.3d at 86). However, a new trial is required only if juror misconduct and prejudice are determined to exist. Cox, 324 F.3d at 86.

The general presumption is that jurors remain true to their oath and conscientiously observe the trial court's instructions. Cox, 324 F.3d at 87 (citing United States v. Rosario, 111 F.3d 293, 300 (2d Cir. 1997)). Moreover, "intra-jury communications pose a less serious threat to a defendant's right to an impartial trial than do extra-jury influences, and therefore district courts are entitled to even greater deference in their responses to them than in responses to outside influences." United States v. Bertoli, 40 F.3d 1384, 1394 (3d Cir. 1994) ("In this case, by contrast, and similarly to most cases involving premature

deliberations, there is no contention that the jury was exposed to extraneous influences; instead, the concern is that the trial was tainted because jurors prematurely spoke their views about the evidence they properly were considering. Thus, we should be especially wary about second-guessing the district court in this case"). Further, "when there are premature deliberations among jurors with no allegations of external influence on the jury, the proper process for jury decisionmaking has been violated, but there is no reason to doubt that the jury based its ultimate decision only on evidence formally presented at trial." United States v. Resko, 3 F.3d 684, 690 (3d Cir. 1993).

Even assuming that a juror did say "guilty" in reference to this case, prior to deliberations, this was an intra-jury communication, with absolutely no indication of any external influence on the jury. In this regard, the Court notes that this jury carefully and intently followed all of the testimony and the presentation of the evidence with close attention and in such an admirable manner as to be complimented by the Court on many occasions. The Defendants provided absolutely no reason to doubt that this jury carefully considered and weighed the evidence and based its decisions solely on the evidence presented during this lengthy trial. The evidence presented at the hearing is not sufficient to rebut the general presumption that the jurors remained true to their oath and conscientiously observed the trial court's instructions.

Although the Defendants cite <u>United States v. Resko</u>, 3 F.3d 684, 688 (3d Cir. 1993), as an example of some of the dangers of premature deliberations, in the present case, one juror's alleged comment "guilty, guilty, guilty" provides no reason to suspect that the entire jury was engaged in premature deliberations, as in <u>Resko</u>, or that this was a case of anything other than one juror's out-of-context remarks.

Moreover, the <u>Resko</u> court limited its holding, noting that the case "raise[d] an important issue concerning the appropriate remedy for juror misconduct discovered mid-trial."  <u>Resko</u>, 3 F.3d at 686.  Further, the court in <u>Resko</u> determined that

> as a practical matter, it is far easier for a district court to address allegations of jury misconduct when they come to light mid-trial rather than after the verdict has been entered and the jury discharged. Before the jury has been discharged, a district judge can more readily and more fruitfully explore whether misconduct has in fact occurred and if so, its effect on the jurors. Thus, the balance of practical considerations counseling in favor of further investigation into intra-jury misconduct are much greater when the misconduct is alleged mid-trial rather than post-verdict, when the district court's inquiry will likely be less productive while consuming more time and resources.  In addition, at that point, the district court is also in a position to tailor a cautionary instruction to correct the ascertained damage.

<u>Id</u>. at 694-95.  Here the Court had no such mid-trial opportunity, even though the allegedly overheard remark was made 3 to 4 weeks before the verdict.

Although the Defendants also rely on <u>United States v. Carmona</u>, 858 F.2d

66 (2d Cir. 1988), that reliance is similarly misplaced.  In <u>Carmona</u>, the Second

Circuit noted:

> appellant claims that the district court erred by denying his
> motion for a new trial following a disclosure that some of the
> jurors had discussed the case among themselves during trial.
> Defense counsel notified the court of the alleged juror misconduct
> after the jury had returned its verdict. Judge McLaughlin
> thereafter questioned each juror and found that some of them had
> indeed discussed various minor aspects of the trial. The judge
> concluded, however, that these discussions had not resulted in any
> prejudice against the defendants.

<u>Carmona</u>, 858 F.2d at 69.   In <u>Carmona</u>, the district court interviewed jurors after

the verdict because there was a disclosure that "some of the jurors" had discussed

the case.  <u>Id.</u>  In the present case, as previously noted, a random, potentially out-

of-context comment, by one single juror in the parking lot, allegedly overheard

without any further information, is insufficient to lead to an inference that

multiple jurors were involved in premature deliberations.

In <u>Brown v. Greiner</u>, No. 02-cv-2043, 2003 U.S. Dist. LEXIS 22589

(E.D.N.Y. Oct. 2, 2003), Judge Weinstein denied a petition for a writ of habeas

corpus in a case with facts substantially similar to those in the present case.  In

<u>Brown</u>, the petitioner claimed "that juror misconduct deprived him of a fair trial.

In his motion to set aside the verdict after the trial, petitioner included an affidavit

from juror number 11 stating that juror number 12 had said to his fellow jurors, 'I know I shouldn't be saying this, but he is guilty, guilty, guilty.'" <u>Id</u>. at *35. The trial court had found that a hearing was unnecessary because the alleged comment was a single isolated comment that was not inherently prejudicial as to impair the defendant's right to a fair trial. <u>Id</u>.

In addressing the petitioner's habeas corpus petition, Judge Weinstein determined that:

> [p]remature deliberation by jurors do not, however, necessarily deprive a defendant of a fair trial. "The important thing is not that jurors keep silent with each other about the case but that each juror keep an open mind until the case has been submitted to the jury …. The test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." <u>United States v. Klee</u>, 494 F.2d 394, 396 (9th Cir. 1974); <u>see also</u> <u>Davis v. Woodford</u>, 333 F.3d 982, 1005-06 (9th Cir. 2003) ("Were we to assume that premature deliberations occurred, such an exchange, though not necessarily proper, is not as serious as private communication, contact, or tampering … with a juror during a trial [or] … influence of the press upon the jury, nor does every incident of juror misconduct require [] a new trial." (quotation omitted)).

<u>Id</u>. at *36-37. Notably, and relevant to the issues raised in the present case, Judge Weinstein further wisely determined that:

> Our criminal justice system does not contemplate that jurors will avoid forming tentative conclusions about the guilt or innocence of a defendant before all the evidence has been presented and the judge releases them to the jury room for deliberations. All that is required of a juror is that he or she keep an "open mind" and

remain receptive to the parties arguments and evidence. It is thoroughly unsurprising that at some point near the end of a trial one or more jurors will believe a defendant's guilt or innocence to have been established. Even so, those jurors vowed they would be receptive to opposing arguments. This is, after all, the goal of requiring juror deliberation in an effort to reach unanimity. There is no indication that juror number 12 failed to participate in deliberations in good faith.

In the present case, it was obviously improper for the juror to have made his comments--assuming he did so--prior to the start of deliberations. It was reasonable to conclude, however, that the isolated remark was not sufficiently serious to have denied petitioner a fair trial.

Brown, 2003 U.S. Dist. LEXIS at *37-38.  See also United States v. Harris, 908 F.2d 728, 734 (11th Cir. 1990) ("Although the government argues that the statement -- 'do it to him good' -- was never made, in the absence of a hearing by the district court, we must assume that it was made . . . The district court refused to investigate this remark because it observed that after several weeks of trial the jurors would naturally begin to form an opinion of the case . . . The district court properly exercised its discretion in deciding that the remark, made in the third week of trial, did not justify a potentially disruptive investigation").

In the present case, not only is the evidence of premature deliberations extremely limited, but in addition, there is no evidence that the Defendants were deprived of a fair trial.  One juror's potentially out-of-context, single word comment, does not demonstrate that the jurors prematurely deliberated, but more

importantly, it does not demonstrate that the juror would be unreceptive to opposing arguments or that any juror failed to participate in deliberations in good faith. As stated previously, a major principle in the subject of alleged juror misconduct is that "intra-jury communications pose a less serious threat to a defendant's right to an impartial trial than do extra-jury influences," so that this Court is entitled to greater discretion in its response. Bertoli, 40 F.3d at 1394.

### 3. As To Jurors Testifying at a Hearing

Although the Court finds that there is insufficient evidence of juror misconduct to justify either a hearing involving the jurors or a new trial, pursuant to Fed. R. Evid. 606(b), a hearing with testimony from the jurors would also be prohibited. Rule 606(b) provides:

> [u]pon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

Fed. R. Evid. 606(b). This Court strongly concurs with the statement in

Weissenberger's Federal Evidence, §606.2:

> Rule 606(b) reflects the common-law tradition of protecting and
> preserving the integrity of the jury room by declaring jurors
> generally incompetent to testify as to any matter purely internal
> to the jury's deliberations. The Rule pertains to a jury's collective
> discussions and exchanges as well as individual jurors' mental
> and emotional deliberative processes. The Rule is designed to
> ensure the finality of verdicts and to protect jurors from being
> unceasingly harassed by defeated parties. In the absence of such
> protection, the confidentiality and candor of the jury room would
> become the constant subject of public investigation.
> Consequently, the Rule is designed to foster the time-honored
> and highly valued freedom of conference critical to the entire
> scheme of trial by jury, and it erects a barrier to the introduction
> of evidence from a juror concerning matters that are purely
> internal to the jury's deliberations.

GLEN WEISSENBERGER & JOSEPH P. KINNEARY, WEISSENBERGER'S FEDERAL
EVIDENCE § 606.2 (3d ed. 1998). In the present case, there is no claim by the
Defendants that outside influences or extraneous prejudicial information were
considered by the jury. As stated above, there is a strong interest in ensuring the
finality of the verdict in the present case because the alleged misconduct involves
a matter purely internal to the jury. Moreover, Fed. R. Evid. 606(b) specifically
prohibits a court from permitting jurors to testify about any matters internal to the
jury and only provides for testimony regarding outside influences on the jury.

Although the Defendants contend that Rule 606(b) does not apply to the
present case because the evidence of juror misconduct relates to statements made

prior to deliberations rather than during deliberations, in the Court's view, this contention is without merit.  In <u>United States v. Logan</u>, 250 F.3d 350, 378 (6th Cir. 2001), after the verdict, defense counsel learned that "the jury routinely discussed evidence among themselves during the course of the entire trial, thereby effectively deliberating prior to the close of the evidence and prior to being advised of the appropriate jury instructions."  The Court applied Rule 606(b), prohibiting testimony by jurors, despite the fact that the allegations of misconduct involved pre-deliberation statements.  Specifically, the <u>Logan</u> court determined that "the alleged jury misconduct consisted of potentially premature deliberations that occurred during the course of the trial. The district court correctly determined that this alleged misconduct constituted a potential internal influence on the jury. Because Rule 606(b) prohibits post-verdict interrogation of jurors as to internal influences, the district court did not err in denying Appellants' motion for permission to interview the jurors."  <u>Logan</u>, 250 F.3d at 381.

In <u>Resko</u>, a case relied upon by the Defendants, addressing premature deliberations by the jury that came to light before the verdict, the court noted:

> there is a doctrinal distinction between those situations in which evidence of intra-jury misconduct comes to light during trial and those situations in which such evidence is discovered only after the verdict has been entered. In the latter context, Fed. R. Evid. 606(b) prohibits a juror from testifying about such intra-jury influences although it imposes no such proscription before the verdict has been entered.

Resko, 3 F.3d at 695. Clearly, the Resko court, although not faced with a situation of premature deliberations raised after the verdict, recognized that Rule 606(b) would apply to such a scenario because Rule 606(b) prohibits jurors from testifying about intra-jury influences after the verdict.

Although the Defendants again cite to United States v. Carmona, 858 F.2d 66 (2d Cir. 1988), in support of their claim that, regardless of Rule 606(b), jurors may testify regarding pre-deliberations statements, this reliance is misplaced. In Carmona, following the jury's verdict, there were allegations that the jury prematurely deliberated and post-verdict, the Judge questioned the jurors. However, the Second Circuit's opinion does not mention Rule 606(b) or provide any discussion of whether the jurors were properly permitted to testify following the verdict. In fact, it appears likely that the issue of Rule 606(b) was not before the Second Circuit for consideration. Carmona, 858 F.2d at 69.

The case law within this Circuit supports this Court's view that Rule 606(b) applies to the present case and prohibits testimony from the jurors. In United States v. Gigante, 53 F. Supp. 2d 274, 275 (E.D.N.Y. 1999), "[t]he defendant [] produced a witness who had been a driver for a group of three jurors and one alternate during and after the trial. This driver made declarations out of court, and gave testimony in court, alleging that the jurors had discussed the case

in groups before and during deliberations and had been influenced by the views of

an alternate."  The court discussed Rule 606(b), finding that it prohibited inquiry

into the jurors' alleged pre-deliberations discussions.

> The courts do not expect perfection of its jurors. This jury
> took its work seriously. It was selected after a meticulous
> attempt to obtain an impartial panel through extensive
> written questionnaires and oral voir dire. Credulity would be
> fractured were the court to conclude that  this jury based its
> decision on the picayune departures described by the witness.
>
> This jury did its job well. It should not be called to account
> now. Every juror cannot be expected to slavishly follow
> every judicial injunction over weeks or months of a trial.
> Members of the jury may from time to time blurt out
> reactions or express reactions facially as by rolling their eyes,
> despite the fact that they are not supposed to do so. But these
> minor deficiencies -- even if they exist, and the court finds
> they did not -- could have had no appreciable influence
> during a trial which took so many days and was so
> effectively tried by excellent counsel on both sides.

Id. at 277-78.

Finally, in United States v. Abcasis, 811 F. Supp. 828, 833 (E.D.N.Y.

1992), *rev'd on other grounds* 45 F.3d 39 (2d Cir. 1995), the jurors conducted

pre-deliberations polls regarding the defendant's guilt or innocence.   Judge

Hurley noted that "Rule 606(b) has been held to apply similarly to conduct

occurring prior to deliberations."  Abcasis, 811 F. Supp. at 834, n.4.  In fact,

Judge Hurley determined that the misconduct of the jurors alleged by the

defendant, including pre-deliberations discussions of the evidence and polling, did not warrant either a hearing with the jurors or a new trial. Id. He found that the jurors' alleged misconduct did not involve extraneous influences. Id.

As a result, the Court finds that Rule 606(b) protects the finality of the verdict and bars any inquiry into the jurors' deliberative processes. Accordingly, the Court finds that the jurors are barred from testifying pursuant to Rule 606(b).

In a motion for a new trial after a verdict against the Defendants there has to be a sufficient, compelling reason to bring this jury back and the Court finds there is none. In this Court's view there is no clear, strong and incontrovertible evidence of a specific impropriety.

Moreover, the Court finds that the Defendants were not deprived of a fair trial and a further hearing is unnecessary. As such, the motions for an additional hearing and a new trial are denied.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the Defendants' motion for a hearing to include testimony from jurors is **DENIED**; and it is further

**ORDERED**, that the Defendants' motion pursuant to Fed. R. Crim. P. 33 for a new trial based on alleged juror misconduct is **DENIED**.

**SO ORDERED**.

Dated: Central Islip, New York
       January 14, 2008

　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Arthur D. Spatt*
　　　　　　　　　　　　　　　　　　　　　　　ARTHUR D. SPATT
　　　　　　　　　　　　　　　　　　　United States District Judge