UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

                        Plaintiff,

         -against-               **MEMORANDUM OF DECISION AND ORDER**
                                            07-cr-429 (ADS) (WDW)

VARSHA MAHENDER SABHNANI and
MAHENDER MURLIDHAR SABHNANI,

                        Defendants.
------------------------------------------------------------X

**APPEARANCES**:

**BENTON J. CAMPBELL, UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK**
Attorneys for the Plaintiff
610 Federal Plaza
Central Islip, New York 11722
        By:    Mark Joseph Lesko, Assistant United States Attorney,
                Demetri M. Jones, Assistant United States Attorney

**HOFFMAN & POLLOK LLP**
Attorneys for the Defendant Varsha Mahender Sabhnani
260 Madison Avenue
22nd Floor
New York, NY 10016
        By:    Jeffrey C. Hoffman, Esq.,
                Susan C. Wolfe, Esq.,
                Joanna Eftychiou-Evans, Esq., Of Counsel

**SCARING & BRISSENDEN, P.L.L.C.**
Attorneys for the Defendant Mahender Murlidhar Sabhnani
666 Old Country Road, Suite 501
Garden City, NY 11530
    By:    Stephen P. Scaring, Esq.,
             Matthew W. Brissenden, Esq.,Of Counsel

**SPATT, District Judge.**

On May 22, 2007, Varsha Mahender Sabhnani ("Varsha") and Mahender Murlidhar Sabhnani ("Mahender") (collectively, the "Defendants" or the "Sabhnanis") were indicted and charged with two counts of forced labor and two counts of harboring aliens in relation to their alleged treatment of two domestic servants from Indonesia, named Samirah and Enung. On September 18, 2007, pursuant to a superseding indictment, the Defendants were charged with: (1) conspiracy to commit forced labor; (2) two counts of forced labor; (3) conspiracy to harbor aliens; (4) two counts of harboring aliens; (5) conspiracy to commit peonage; (6) two counts of peonage; (7) conspiracy to commit document servitude; and (8) two counts of document servitude.

On December 17, 2007, the jury returned a verdict finding both Defendants guilty of all 12 counts in the indictment.

On June 26, 2008, Varsha Sabhnani was sentenced to a term of imprisonment of 132 months in connection with her conviction. On June 27, 2008, Mahender Sabhnani was sentenced to a term of imprisonment of forty

months in connection with his conviction.

Presently before the Court is the issue of the amount of restitution owed by the Defendants.

## DISCUSSION

**I.** **As To Restitution**

### A. Mandatory Restitution

18 U.S.C. §1593 provides for mandatory restitution in cases of peonage, slavery and trafficking. Specifically, the statute provides

> (a) Notwithstanding section 3663 or 3663A [18 USCS §§ 3663 and 3663A], and in addition to any other civil or criminal penalties authorized by law, the court shall order restitution for any offense under this chapter [18 USCS §§ 1581 et seq.].
>
> (b) (1) The order of restitution under this section shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses, as determined by the court under paragraph (3) of this subsection.
>     (2) An order of restitution under this section shall be issued and enforced in accordance with section 3664 [18 USCS § 3664] in the same manner as an order under section 3663A [18 USCS § 3663A].
>
>     (3) As used in this subsection, the term "full amount of the victim's losses" has the same meaning as provided in section 2259(b)(3) [18 USCS § 2259(b)(3)] and shall in addition include the greater of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act (29

U.S.C. 201 et seq.).

18 U.S.C. § 1593. As noted in the statute, victims are entitled to restitution in the "full amount of the victim's losses" including the value of their labor or services, pursuant to the Fair Labor Standards Act ("FLSA").

As noted in 18 U.S.C. § 1593, this Court must also comply with 18 U.S.C. § 3663. Pursuant to that section, the Court must also consider:

> (I) the amount of the loss sustained by each victim as a result of the offense; and
> (II) the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

18 U.S.C. § 3663. In addition, pursuant to 18 U.S.C. § 1593, the amount of the victim's losses "has the same meaning as provided in 18 U.S.C. § 2259(b)(3)." That statute enumerates some of the costs of the victim to be reimbursed as follows:

> For purposes of this subsection, the term "full amount of the victim's losses" includes any costs incurred by the victim for--
> (A) medical services relating to physical, psychiatric, or psychological care;
> (B) physical and occupational therapy or rehabilitation;
> (C) necessary transportation, temporary housing, and child care expenses;
> (D) lost income;
> (E) attorneys' fees, as well as other costs incurred; and
> (F) any other losses suffered by the victim as a proximate result of the offense.

4

18 U.S.C. § 2259(b)(3).

### B. As To Domestic Workers

The FLSA was amended in 1974 to broaden its coverage and include protection for workers performing domestic services. Coke v. Long Island Care at Home, Ltd., 376 F.3d 118, 123 (2d Cir. 2004). However, there is an exception for domestic servants who reside in the employer's household. In this regard, the maximum hour requirements of the FLSA do not apply to "any employee who is employed in domestic service in a household and who resides in such household." 29 U.S.C. § 213 (b)(21).

On February 3, 1981, the Department of Labor ("DOL") issued an opinion letter with regard to whether employees of a group home could be considered to reside at the home, noting "[w]here the facilities offered by the employer provide a home-like environment with private quarters separate from the residents . . . we would regard such employees as residing there." In 2007, a Court in the Eastern District of California cited the DOL's 1981 opinion letter, again noting that an employee only resides on the employer's premises if the environment is home-like. Chao v. Jasmine Hall Care Homes, Inc., No. 05-cv-1306, 2007 WL 4591438, at *2 (E.D. Cal. Dec. 28. 2007).

In the present case, pursuant to the definition set forth by the DOL, the Court finds that Samirah and Enung did not "reside" with the Defendants within

5

the purport of the FLSA.  The trial testimony did not reveal a "home-like environment" where Samirah and Enung were provided with private quarters.  To the contrary, the environment described throughout the trial was anything but "home-like."  The women usually slept on the floor in various parts of the house.  In addition, the proof was clear that they were beaten and tortured and kept in subjugation against their will.  Their living in the Sabhnani home could not be properly characterized as "an employee . . . in domestic service in a household who resides in such household."  Samirah and Enung did not reside in the Sabhnani household, they were kept in confinement.  As a result, the exception set forth in 29 U.S.C. § 213 (b)(21) would not be applicable.

  **C.** **As To Sleep and Meal Periods**

Pursuant to 29 CFR § 785.19, "[b]ona fide meal periods are not worktime . . . These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals . . .  The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating."  29 CFR 785.19.  As such, employees are not entitled to compensation for bona fide meal times. In addition, 29 CFR § 785.22 applies to employees who are on duty for 24 hours or more in a day.  Pursuant to this section,

> [i]f the sleeping period is interrupted by a call to duty, the interruption must be counted as hours worked. If the period is interrupted to such an extent that the employee cannot get a reasonable night's sleep, the entire period must be counted. For

> enforcement purposes, the Divisons have adopted the rule that if the employee cannot get at least 5 hours' sleep during the scheduled period the entire time is working time.

29 CFR 785.22.

In the present case, Samirah and Enung testified that they were not provided with a sufficient amount of food and on occasion, were actually forced to eat food out of the garbage. The trial testimony of Samirah and Enung is filled with instances of cruelty, torture and deprivation of food and sleep. In addition, as the trial testimony revealed, Deborah Litras, the Mahender Sabhnani employee, felt sorry for Samirah and Enung and bought food for them, including donuts and muffins, but she removed the wrappers so the Defendants would not find out. Also, Anthony Pascarella, the Sabhnanis' gardener, testified that he gave food to Samirah and Enung, including donuts, chicken and bread. None of this trial testimony was refuted. As a result, it is apparent that the women were not provided with bona fide meal periods. As such, the Court finds that no time should be excluded for meal periods. In addition, the victims testified regarding their lack of sleep, as well as duties they were called upon to perform at all hours of the day and night. Specifically, Enung testified that she often worked late in the night and the she woke up at 4 a.m. every day to begin work. The proof at the trial revealed that they were, in fact, on duty 24 hours each day and unable to obtain 5 hours of sleep each night. As a result, the Court finds that the entire days

for Samirah and Enung should be considered working time.

In further support of disallowing an exception for meals and lodging, in Marshall v. Intraworld Commodities Corp., No. 79 C 918, 1980 WL 2097, at *4 (E.D.N.Y. June 9, 1980), the Court refused to credit the employer for meals and lodging, finding "that a credit is allowed only where acceptance by the employee was voluntary and uncoerced." In that case, as in the instant case, the Court found that the employee had no other place to live and no choice but to accept what the employer had provided.

In support of these findings, by the terms of 29 CFR 785.20, "[u]nder certain conditions an employee is considered to be working even though some of h[er] time is spent in sleeping or in certain other activities." In the present case, it appears from the trial testimony that the victims were on duty at all hours of the day and night. As a result, even though they have slept for some hours each night, pursuant to this section, the Court finds that Samirah and Enung were on duty at all times. Therefore, as stated above, the Court finds that the entire 24 hour days for Samirah and Enung should be considered as working time.

### D. As To Liquidated Damages or Double Restitution

As previously noted, 18 U.S.C. § 1593, the mandatory restitution statute relevant to the present offenses, provides for the application of the FLSA in order to compensate for "the full amount of the victim's losses." As previously noted,

18 U.S.C. § 2259 defines the full amount of the victim's losses to include medical services, lost income, attorneys' fees and any other losses suffered by the victim as a proximate result of the offense. Restitution is, in fact, compensatory in nature, and the liquidated damages provision of the FLSA is not punitive; rather, in providing victims with double damages it is actually also compensatory in nature. As stated by the Second Circuit, "[l]iquidated damages are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA." Herman v. RSR Security Services, Ltd., 172 F.3d 132, 142 (2d Cir. 1999).

The Court notes that it has discretion to deny this award if an employer shows that he acted in subjective good faith, and had objectively reasonable grounds to believe that his acts or omissions did not violate the FLSA. Id. The employer bears this burden of proving good faith and reasonableness. The employers in this case, the Sabhnanis, failed to meet this burden. The Court also notes that in Herman, the Second Circuit states that "double damages being the norm and single damages the exception." Id.

Although the Defendants contend that the rules in Herman only apply to civil actions, the underlying statute does not support that contention. The statute states that it applies to actions brought "to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor

9

Standards Act." 29 U.S.C. § 260.

The applicable criminal restitution statute, 18 U.S.C. § 1593, clearly expressly provides for application of the FLSA to the present restitution award**.** In the Court's view, it is reasonable and just to apply this double damages rule, applicable in a civil case, to restitution in a more serious criminal case. Moreover, the double damages provision of the FLSA is intended to compensate the victims for additional losses incurred as a result of the delay in receiving their wages. Considering the statute's broad application of the FLSA and the compensatory nature of the double damages award, the Court finds that the restitution award should include double damages, as being within the scope of compensation described by 18 U.S.C. § 1593.

In this regard, the Court notes that, clearly, the Defendants have not demonstrated good faith or reasonable grounds to believe that they were not violating the FLSA. The Defendants did not even come close to compensating Samirah and Enung properly for the work they performed. In this regard, the Court notes that Mahender owns and operates a substantial, profitable and still thriving business, with employees, and, with reasonable certainty**,** must have had some knowledge of the compensation provisions of the FLSA.

### E. The Government's Calculations

Considering the statutes, case law and trial testimony, the Government's

restitution calculations appear to be reasonable and correct with certain exceptions which will be explained. The Government used the applicable minimum wage rates and subtracted the amounts that were actually paid to the victims' families. The only open questions remain (1) whether the Defendants should provide some compensation for the summer months when they were out of the country, and (2) Varsha's belated raising of the defense of the statute of limitations.

In the Court's view, the women should be compensated during the time that the Defendants were away. The women were taking care of the house and performing daily chores during that period. The Court finds that it would be fair and reasonable to compensate them for 8 hours each day when the Defendants were away, rather then the 24 hours each day when the Sabhnanis were home. As a result, for those summer months, the victims would be compensated for 8 hours each day at the regular minimum wage rate of pay. However, the total award should be doubled including this summer time. The doubling is to compensate for the time the victims were without the money. They were never compensated for even the 8 hours of work.

**F.    As To The Statute Of Limitations**

In the present case, the Defendant Varsha Sabhnani contends that if the Court applies the provisions of the FLSA to the present case, including the

liquidated damages provision, the Court must also apply the statute of limitations set forth in the FLSA.

Pursuant to 29 U.S.C. § 255:

> Any action commenced on or after the date of the enactment of this Act [enacted May 14, 1947] to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act--
>
> (a) if the cause of action accrues on or after the date of the enactment of this Act [enacted May 14, 1947]--may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.

29 U.S.C. § 255(a).

"The FLSA generally provides for a two-year statute of limitations on actions to enforce its provisions, but allows a three-year limitations period for 'a cause of action arising out of a willful violation.'" Herman v. RSR Sec. Servs., 172 F.3d 132, 141 (2d Cir. 1999)(citing 29 U.S.C. § 255(a)); Ramirez v. Rifkin, No 06-cv-6169, 2008 U.S. Dist. LEXIS 48238, at *11 (E.D.N.Y. June 23, 2008) ("A suit under the FLSA must be commenced within two years after the cause of action has accrued, unless a plaintiff can show that a defendant's violation of the Act was willful, in which case a three-year statute of limitation applies"). "For an

employer's actions to be willful, the employer must have 'either [known] or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'" Ramirez, 2008 U.S. Dist. LEXIS at *11 (citing McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988)).

As the Court is applying the liquidated damages provision of the FLSA, the Court finds no reason why it should not also consider the statute of limitations. However, the Court finds that, with regard to the statute of limitations in the context of a FLSA violation, the theory of the equitable tolling doctrine, which is read into every federal statute of limitations, is applicable.

In Kamens v. Summit Stainless, Inc., 586 F. Supp. 324 (E.D. Pa. 1984), a case involving overtime compensation pursuant to the FLSA, the plaintiffs alleged that, at no time during the course of their employment, did they see a United States Department of Labor poster advising them of their minimum wage and overtime pay rights. The Court found that employers are required to post notice and the failure to do so tolls the statute of limitations. Kamens, 586 F. Supp. at 328 (citing Bonham v. Dresser Indus., 569 F.2d 187, 193 (3d Cir. 1978)).

In the present case, not only was there no notice, but the women could not speak English. They were completely unaware of the FLSA or any of its minimum wage or overtime provisions. There is no question that in the present

case, there was equitable tolling of the statute of limitations. As such, the limitations period is equitably tolled.

**G.     As To The Defendants' Objections**

In their sentencing memoranda, the Defendants object to the Government's restitution calculation, noting that domestic workers are exempt from the FLSA; the victims should not be compensated for meal and sleep periods; and liquidated damages are only applicable in civil cases. Those arguments have previously been addressed by the Court and will not be repeated.

By letter dated July 1, 2008, the attorneys for Varsha Sabhnani raised additional objections to the Government's restitution calculation. Varsha requests a detailed factual hearing, with testimony from the victims, regarding the appropriate amount of restitution. She contends that the trial evidence is insufficient to prove that the victims did not have adequate sleeping quarters. She asserts that there is no evidence that they asked to sleep in beds. Similarly, Varsha claims that the victims testified that when Varsha was "still nice" they were given food and that there was no testimony regarding the time that the victims were allotted for meals. In addition, she claims that following their release from the hospital, the victims' blood test results and other tests were normal demonstrating that they were provided with food. Varsha also reiterates the claim that liquidated damages are only applicable in civil cases.

In opposition, the Government contends that a hearing with testimony from the victims is not necessary. The Government contends that the victims testified in detail for days on direct and cross-examination regarding the food and sleeping arrangements in the Sabhnani home. In fact, the Court recalls that both women were on the stand and subjected to intensive questioning on all the subjects including those involved in this restitution issue, for substantial periods of time. Samirah was on the stand for five days, November 1, 5, 7, 8 and 13, 2007. Her testimony, including intensive and lengthy cross-examination covered 584 pages in the transcript including 252 pages of cross-examination. Enung was also on the stand for five days, November 20, 21, 26, 27 and 28, 2007. Her testimony covered 498 pages in the Court record including 189 pages of cross-examination.

In United States v. Maurer, 226 F.3d 150, 151 (2d Cir. 2000), the Second Circuit determined that "[t]he procedures used at sentencing are within the discretion of the district court so long as the defendant is given an adequate opportunity to present his position." In that case, although the defendant contended that the district court erred in failing to conduct a hearing regarding the amount of restitution, the Second Circuit found that "the trial record shed substantial light on the propriety of the restitution award, and the record reveals that [the defendant] had ample opportunity to present his views." Maurer, 226

F.3d at 152.

Similarly, in the Court's view, the testimony of Samirah and Enung covered substantially all the subjects raised by the Defendants in their present restitution arguments. The two victims need not be further interrogated on the same or similar subjects. The Defendants' request to produce Samirah and Enung at the restitution hearing is denied.

In addition, the Defendants contend that liquidated damages are only available where the defendant employer has been afforded a jury trial. In support of this contention, the Defendants cite to <u>Brock v. Superior Care, Inc.</u>, 840 F.2d 1054, 1064 (2d Cir. 1988), in which the Second Circuit stated "[t]he FLSA does not allow liquidated damages where, as here, the employer has no right to a jury on the underlying issue of unpaid overtime compensation . . . Congress has limited the remedy of liquidated damages to actions under section 16 where the employer has a right to a jury trial on the back pay issue." The Court further determined that "[s]uits . . . for injunctive relief . . . have been considered equitable in nature; the award of back pay, without liquidated damages, is in the nature of restitution, and the defendant has no right to a jury trial . . . Suits by an employee or by the Secretary for back wages . . . have been considered to be actions at law, and the employer has a right to a jury." <u>Brock</u>, 840 F.2d at 1063.

The Court notes that the problem in the present case is the interplay

between a criminal restitution statute and the FLSA. The problem arises from the fact that the criminal restitution statute at issue in the present case specifically refers to and includes the provisions of the FLSA. However, according to the restitution statute, restitution should be provided for "the full amount of the victim's losses." Pursuant to §2259(b)(3), "the full amount of the victim's losses" includes all costs incurred and losses suffered by the victim as a proximate result of the offense. The language contained in the "loss" statute is so broad, it appears to include the liquidated damages in the FLSA, which is intended to compensate victims rather than punish. As a result, an award of liquidated damages is not placing the victims in a better position, they are simply getting the money that they should have received .

Moreover, in the present case, there has been a jury trial of all issues involved in this criminal case. In the Court's view, Congress did not intend, in the present situation, that this Court hold a second trial on the restitution issues. In addition, the Second Circuit has determined that a jury need not determine restitution. United States v. Tin Yat Chin, 476 F.3d 144, 147 (2d Cir. 2007) ("Finally, Chin's claim that the district court's determination of the restitution amount under the Mandatory Victim Restitution Act, 18 U.S.C. §§ 3663A et seq., violates his alleged constitutional right to have this determination made by a jury is foreclosed by our holding to the contrary in United States v. Reifler, 446 F.3d

65, 118 (2d Cir. 2006)").

As such, the Defendants' request for a jury determination of liquidated damages under the FLSA is denied.

## **CONCLUSION**

In determining this order of restitution the Court did consider (1) the financial resources of the Defendants; (2) the financial needs and earning ability of the Defendants; and (3) the Defendants' dependents.

In accordance with this decision, the Court finds that restitution payable to the victims, Samirah and Enung, is as follows:

(1) Samirah's net back pay is equal to $310,371.91;

(2) Samirah is entitled to liquidated damages in the amount of $310,371.91;

(3) Enung's back pay is equal to $157,901.20; and

(4) Enung is entitled to liquidated damages in the amount of $157,901.20.

Annexed as Exhibit A is a chart showing the itemized figures leading to the back pay restitution award for Samirah and Enung.

As such, it is hereby

**ORDERED**, that Samirah is awarded restitution in the total sum of $620,743.82; and it is further

**ORDERED**, that Enung is awarded restitution in the total sum of

$315,802.40.

**SO ORDERED**.

Dated: Central Islip, New York
July 19, 2008

*/s/ Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge